IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 17-144 |
| ) | |
| KEVIN GRACE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**OPINION**

I.  Introduction

Pending before the court is a motion for compassionate release (ECF No. 398) filed pro se by defendant Kevin Grace ("Grace"), with attached medical records (ECF No. 398-1). Pursuant to its standing order, the court appointed counsel to review the motion and determine whether a supplement should be filed by counsel. On October 13, 2021, counsel filed a status report to inform the court that he was still waiting on the Bureau of Prisons ("BOP") to provide additional medical records. On October 26, 2021, the court ordered the BOP to release the medical records to counsel. Counsel notified the court that upon review of the medical records, he will not be filing a supplement. The court will therefore rule on Grace's pro se motion. The government filed a response, admitting that Grace exhausted his administrative remedies, but opposing relief on substantive grounds (ECF No. 81). The motion is ripe for disposition on the merits. United States v. Harris, No. 20-1723, 973 F.3d 170 (3d Cir. 2020).

II.  Procedural Background

On April 20, 2018, Grace pleaded guilty to counts 1 and 4 of the indictment at Crim. No. 17-144, which charged him with (count 1) conspiracy to distribute and possess with intent to

1

distribute 100 grams or more of heroin, 280 grams or more of crack cocaine and a quantity of fentanyl, and (count 4) possession with intent to distribute quantities of cocaine and crack cocaine.  In the plea agreement, the parties stipulated and agreed that the appropriate sentence was a term of imprisonment of 10 years, followed by a term of supervised release of 5 years, no fine, a $200 special assessment and forfeiture of $11,124 in United States currency.  On July 30, 2018, the court accepted the Rule 11(c)(1)(C) plea agreement and imposed the agreed-upon sentence.  The term of imprisonment represented a slight downward variance from the advisory guideline range of 121-151 months.  The term of imprisonment reflected the statutory mandatory minimum at count 1.  The term of imprisonment at count 4 was imposed to run concurrent with the prison term at count 1.

Grace is 39 years old and is currently incarcerated at FCI Hazelton, a medium security prison in Bruceton Mills, WV.  https://www.bop.gov/locations/institutions/haf/, last visited November 30, 2021.  There are 1,966 inmates at the facility. The BOP website reflected that on November 30, 2021, there were 9 cases of COVID-19 among inmates and 1 active case involving a staff member.  https://www.bop.gov/coronavirus/index.jsp, last visited November 30, 2021.

In March 2021 and July 2021, Grace was fully vaccinated against the COVID-19 virus, receiving two doses of the Pfizer Vaccine (ECF No. 398-1 at 59).  Vaccinations of staff and other inmates at FCI Hazelton are ongoing.  The government represents that as of September 2021, the COVID-19 vaccine had been offered to every inmate in BOP-managed institutions. (ECF No. 399 at 3).  At FCI Hazelton, 2,061 inmates and 363 staff members have been fully vaccinated.  Id.  Vaccines are offered to newly arriving inmates and to those who initially declined to be vaccinated.  Grace did not present any evidence about the impact of his

vaccination on his risk of contracting the Covid-19 virus again or his risk of experiencing severe symptoms if he does get reinfected.

Grace's projected release date, which reflects credit for good time, is December 28, 2025. He has been detained since his arrest in June 2017. Grace contends that he is vulnerable to severe illness and death if exposed to COVID-19 due to: (1) Patent Foramen Ovale ("PFO"); and (2) obesity.

The court takes judicial notice of the following explanation about PFO from the Cleveland Clinic:

> A patent foramen ovale (PFO) means the foramen ovale did not close properly at birth, so there is still an opening in the septum. In most cases, the PFO does not stay open at all times. Instead, it's more like a flap that opens when there is higher pressure than normal in the chambers on the right side of the heart. Situations that can cause greater pressure include straining during bowel movements, coughing and sneezing. When the pressure gets high enough, blood may move from the right atrium to the left atrium. The condition affects about 25% of Americans, but many do not know they have the condition.

https://my.clevelandclinic.org/health/diseases/17326-patent-foramen-ovale-pfo. "Most patients with a PFO do not have any symptoms. However, the condition may play a role in migraine headaches and it increases the risk of stroke, transient ischemic attack and heart attack." Id. PFO is not listed as a risk factor for COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited November 30, 2021.

The Centers for Disease Control ("CDC") reports that being overweight or obese is a risk factor for experiencing severe symptoms from COVID-19: "Overweight (defined as a body mass index (BMI) > 25 kg/m2 but < 30 kg/m2), obesity (BMI ≥30 kg/m2 but < 40 kg/m2), or severe obesity (BMI of ≥40 kg/m2), can make you more likely to get severely ill from COVID-19. The risk of severe COVID-19 illness increases sharply with elevated BMI."

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited November 30, 2021.

The medical records provided by Grace reflect that he is in Medical Care Level 1, which is the lowest care level and indicates he is medically stable. (ECF No. 398-1 at 2, 66). His records reflect a history of heart murmur, but no history of other cardiovascular or respiratory issues. (ECF No. 398-1 at 3, 18). In September 2018, Grace's blood pressure was borderline. (ECF No. 398-1 at 19). Grace weighed 280 pounds on August 28, 2018 and 283.4 pounds on September 5, 2018. (ECF No. 398-1 at 27). He is 71 inches tall. (ECF No. 398-1 at 6). The government calculated his BMI to be 37.7. (ECF No. 399 at 6). The only medical records in 2021 relate to an unspecified issue with his left forearm, a request for routine dental cleaning and the COVID-19 and influenza vaccines. (ECF No. 398-1 at 28, 59, 62). Grace has no activity restrictions. (ECF No. 398-1 at 60).

### III. Discussion

#### A. Applicable Law

Grace seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction; or
> > > >
> > > > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> > >
> > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The statute sets forth a three-step analysis for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18

U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A).  United States v. Andrews, 12 F.4th 255, 258 (3d Cir. 2021) (prisoner's compassionate release motion "may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.").

Based upon the foregoing, to grant Grace compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[1] and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

---

[1] The factors set forth in 18 U.S.C. § 3553(a) are:
- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
- the sentencing range established by the Sentencing Commission, § 3553(a)(4);
- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

Grace bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### B. Extraordinary and Compelling Reasons

#### 1. General Background

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." United States v. Handerhan, No. 19-1904, 789 F. App'x 924, 925 (3d Cir. 2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That

commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less.…The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

In Andrews, the court of appeals held that district courts are not strictly bound by the policy set forth in the sentencing guidelines. Andrews, 12 F.4th at 259. On the other hand, the district court "did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'" Id.

The court in Somerville provided a helpful working definition:

The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").

The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").

> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

Somerville, 2020 WL 2781585, at *7.

### 2. Consideration of COVID-19

In Somerville, the court concluded that "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Somerville, 2020 WL 2781585 at *4.  (emphasis added). That test must be modified in light of the vaccinations that are occurring in BOP facilities.  Even if an inmate has serious underlying medical conditions and faces a non-speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from contracting the virus or significantly reduce that inmate's risk of infection or reinfection.  United States v. Rhodes, No. CR 15-23, 2021 WL 4460031, at *4 (W.D. Pa. Sept. 29, 2021)

The court, therefore, needs to determine whether Grace set forth extraordinary and compelling reasons for his compassionate release based upon his medical conditions and the situation at FCI Hazelton – taking into account his vaccination. Grace has the burden to produce evidence to show that: (1) he faces a uniquely high risk of grave illness or death if infected or reinfected by the COVID-19 virus, considering his underlying medical conditions and age and the protective effects of the vaccine; and (2) he faces a non-speculative risk of contracting or recontracting the COVID-19 virus, considering both the risk of exposure at FCI Hazelton and the preventative effects of the vaccine.

      a. Whether Grace faces a uniquely high risk of grave illness or death from being reinfected by the COVID-19 virus

In his motion, Grace contends that he has a uniquely high risk of grave illness or death from the COVID-19 virus due to his preexisting medical conditions of PFO and obesity. The government recognizes that Grace's obesity would ordinarily place him at increased risk of serious consequences from COVID-19 (ECF No. 399 at 6). The government contends, however, that because Grace is fully vaccinated his risk of severe illness from the COVID-19 virus is substantially mitigated. The government asserts that the BOP is providing appropriate care for Grace's medical conditions. In sum, the government argues that Grace did not meet his burden to demonstrate extraordinary and compelling reasons for compassionate release.

The medical records reflect that Grace is, in fact, receiving proper medical treatment for his preexisting conditions. Those conditions do not prevent Grace from providing self-care in the correctional environment and do not warrant compassionate release. There is no evidence that the prison environment exacerbates Grace's conditions and it appears that he would the same symptoms if he were released. Under the present circumstances, Grace's PFO and obesity do not warrant compassionate release.

The court concludes that, based on this record, because Grace is now fully vaccinated he cannot establish that he faces an extraordinary or compelling risk from the COVID-19 virus. "Although vaccines are not one hundred percent effective, the CDC states that '[c]urrently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19.' Vaccines are particularly effective at preventing 'severe illness and death.'" United States v. Singh, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated risk to such an extent that COVID-19, in combination with defendant's underlying conditions, no longer presented an

extraordinary and compelling reason to grant compassionate release). In <u>Singh</u>, the court recognized that the inmate in that case had underlying medical conditions which ordinarily would have established grounds for compassionate release. The court concluded, however, that vaccination mitigated those risks. <u>Id.</u> at *3. The court's conclusion was "in accord with the vast majority of courts that have considered this issue." <u>Id.</u> (citations omitted).

In other words, the decisions teach that because Grace is fully vaccinated, he faces a reduced risk that: (1) he will contract the COVID-19 virus; and (2) if he is infected, he will experience severe symptoms. In <u>Singh</u>, the court emphasized that an inmate bears the burden to demonstrate that compassionate release is warranted and denied the motion without prejudice to the inmate's opportunity to file a new motion supported by evidence that the vaccine would not mitigate a substantial risk of serious illness from a COVID-19 infection. <u>Id.</u> at *4.

In this case, Grace similarly failed to meet his burden to demonstrate that he continues to face a substantial risk from the COVID-19 virus despite his vaccination. Grace did not provide any evidence about the impact of his vaccination. While there are certainly still unknowns about the vaccine administered to Grace, it appears that Grace's risks of (1) being infected by COVID-19, and (2) suffering severe illness if he is infected, are speculative because of his vaccination. On this record, the court concludes that Grace failed to meet his burden to show extraordinary and compelling reasons for compassionate release due to the COVID-19 virus.

> b. Whether Grace faces an actual, non-speculative risk of contracting the COVID-19 virus at FCI Hazelton

The court takes judicial notice that there are 9 current case of COVID-19 infection among the 1,966 inmates at FCI Hazelton. Although the court recognizes the BOP's significant efforts to minimize and control the spread of the pandemic, it is well-established that it is difficult to

engage in social distancing and other mitigation efforts in a congregate setting such as a prison.

The government reports that over 2000 inmates at FCI Hazelton (including Grace) have now been vaccinated for COVID-19. The vaccine has been offered to all inmates and will be offered to incoming inmates. Vaccination of all or substantially all inmates and staff will limit the spread of the virus and reduce the risk of exposure at FCI Hazelton. As noted above, even if Grace is exposed to the COVID-19 virus, it appears that he will be far less likely to be infected or suffer serious symptoms due to his vaccination. In sum, it would be speculative at this point for the court to conclude there is an actual risk that Grace, after his vaccination, will be infected by the COVID-19 virus at FCI Hazelton.

### c. Conclusion about COVID-19

Because Grace received the two doses of the Pfizer vaccine, the court cannot find that he met his burden to establish that he is at "*uniquely* high risk" of being infected with the COVID-19 virus or experiencing serious illness if he is infected with the COVID-19 virus. To conclude otherwise would be speculative, based upon the record before this court. In sum, Grace did not show an extraordinary and compelling reason for his compassionate release.

### 3. Section 3553(a) factors

Even assuming, arguendo, that Grace articulated extraordinary and compelling reasons, the court would deny his motion. The compassionate release statute states that a court may reduce the term of imprisonment "after" it considers the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A). Even if Grace established an extraordinary or compelling reason for release, release must also be consistent

with the § 3553 factors and guidelines policies. The court recognizes that the conditions of Grace' confinement have been more onerous than anticipated due to the BOP's response to the COVID-19 virus.

The government emphasizes that Grace poses a danger to the community if released. The "danger to the community" policy consideration in U.S.S.G. § 1B1.13 is somewhat similar to the § 3553(a)(2)(C) sentencing factor that a sentence "protect the public from further crimes of the defendant." The government argues that Grace remains a danger to the community based on the seriousness of his crime of conviction (large-scale heroin and crack-cocaine trafficking) and his criminal history (particularly, his involvement in three shootings, one of which resulted in death).

The court weighed the § 3553(a) factors in imposing the original sentence and deciding whether to adopt the parties' Rule 11(c)(1)(C) plea agreement. At that time, the court recognized that Grace engaged in a serious drug offense. The court recognized that the term of imprisonment imposed represented a 1-month downward variance from the low end of the otherwise-applicable advisory guideline range and reflected the statutory mandatory minimum.

Upon reexamining the § 3553(a) factors, the court again adheres to its determination that the term of imprisonment was warranted. Indeed, in the plea agreement, Grace and the government agreed that a term of imprisonment of 120 months was the appropriate sentence. A reduction of his sentence would not be consistent with the statutory sentencing purposes of just punishment, deterrence to criminal conduct and protection of the public from further crimes by the defendant. In sum, the court reaffirms that a term of imprisonment of 120 months is sufficient, but not greater than necessary, to accomplish the sentencing purposes.

### V. Conclusion

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Grace did not satisfy his burden under § 3582(c)(1)(A) to show that an extraordinary and compelling reason warrants his compassionate release from imprisonment. Even assuming Grace met that burden, compassionate release is not appropriate after consideration of the policies and § 3553(a) factors. His motion for compassionate release (ECF No. 398) will, therefore, be denied. The denial is without prejudice in the event Grace's circumstances or the conditions at his place of confinement change.

An appropriate order will be entered.

Dated: November 30, 2021.

BY THE COURT:

s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge